**NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-25-0000828
07-AUG-2026
08:12 AM
Dkt. 49 MO**

NO. CAAP-25-0000828

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

MARIA REGINA E. JACINTO, Petitioner-Appellee,
v.
TERESA BERNICE ARCENAS PARSONS, Respondent-Appellant.

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CASE NO. 1DSS-25-0001346)

MEMORANDUM OPINION
(By: Wadsworth, Presiding Judge, Guidry and Gluck, JJ.)

Respondent-Appellant Teresa Bernice Arcenas Parsons
(**Bernice**) appeals from the October 30, 2025 Injunction Against
Harassment (**Injunction**) issued by the District Court of the
First Circuit, Honolulu Division (**District Court**).[1] Bernice
argues that the District Court erred in granting the Injunction.
Upon careful review of the record and the briefs submitted, and
having given due consideration to the arguments advanced and the
issues raised, we resolve Bernice's contentions as follows, and
affirm.

The background facts are these: Bernice suspected
that her husband, Patrick, was having an affair with Petitioner-
Appellee Maria Regina E. Jacinto (**Maria**). Maria denies that she

---

[1] The Honorable Gregory A. Ferren presided.

and Patrick were having an affair. On October 19 and 21, 2025, Patrick — unbeknownst to Bernice — recorded conversations that he had with Bernice, and he shared those recordings with Maria. On October 22, 2025, Maria filed an ex parte petition for a temporary restraining order (**TRO**) and for injunction against harassment (**Petition**). In her Petition, Maria alleged threats in both April and August 2025, and she included the following allegations:

> On October 19, 2025 . . . I was also informed by a third party that new threats were made toward me, and that [Bernice] stated, "nothing is off limits for me - not her kids, not her husband . . ." in direct reference to me and my family.

> On October 21, 2025 [11:01], I was informed yet again that [Bernice] was threatening to go to my place of business to accost me. I was told that her threat as it pertains to me was: "I'm going to make this messy. Someone will pay. Let's go to the Star Advertiser.[2] When I do what I'll do, jail time is involved."

(Second ellipsis and second brackets in original.) The District Court granted the request for the TRO.[3]

The trial was held eight days later — on October 30, 2025 — and both Bernice's counsel and Maria indicated that they were ready for trial that day. Maria indicated that she had exhibits, and Bernice's counsel noted that the exhibits "don't conform with the procedural rules." The District Court then stated that it could continue the case, but Bernice's counsel declined. Maria stated she did not have any witnesses but did have recordings among her exhibits. Bernice's counsel stated that Bernice did not have exhibits, but "we're 100 percent prepared to proceed today. We've tooled up here in about two days' notice, so we'd like to go forward today."

Maria sought to introduce the conversations between Bernice and Patrick as evidence, though she ultimately

---

[2]     This is a reference to Maria's workplace.

[3]     The Honorable David Hayakawa granted the TRO.

introduced two homemade transcripts of the conversations (Exhibits 3 and 4) rather than the audio itself.[4]  Bernice's counsel stated that he had not heard the recordings.  Although the trial transcript is not entirely clear on this point — it seems Bernice's counsel and the District Court were speaking simultaneously — Bernice's counsel appears to have waived any objection to the accuracy of the transcripts.[5]  However, Bernice's counsel objected on hearsay grounds five times before

---

[4]     Maria testified that she transcribed the audio recording as accurately as possible with the exception of omitting things like "um" and "oh."

[5]     The exchange was as follows:

> [Bernice's counsel]:  I haven't heard it [the recording], I don't know what's on it.

> THE COURT:  Well why don't we listen to it.

> [Bernice's counsel]:  The transcript seems to be sufficient.  In the interest of efficiency, you just -- I mean, if there's something different on here, then one of them is not admissible.

> If this is -- you just said this was accurate; right?

> THE COURT:  Yes, she did.

> [Bernice's counsel]:  So then an "um" and an "oh" Your Honor, if I'm not mistaken, is not going to destroy your case.

> THE COURT:  Okay, so --

> [Bernice's counsel]:  So if this is accurate, you've submitted it into evidence, you've reviewed it --

> THE COURT:  So you'll --

> [Bernice's counsel]:  Sure.

> THE COURT:  -- waive any objection as to the accuracy of the transcript?

> [Bernice's counsel]:  Addressing of the ums and ohs and anything that is inconsequential as far as noises that were made during this recording.

> [Maria]:  Okay.

> THE COURT:  Okay.

the District Court admitted Exhibit 3.[6]  Over Bernice's objections as to hearsay, the District Court also admitted Exhibit 4 into evidence.

The first transcript (Exhibit 3) contained the following statements:

> [Bernice (B)]:  She has no respect for whatsoever for my boundaries so, you know, when I say schrapnel [sic], <u>I'm saying that at some point, I don't know when or where, um but she will pay for what she did</u>.
>
> [Patrick (P)]:  What did she do?
>
> B:  What did she do?  Let's not get into it.  I've already let that go right now for where I need to be.  But she is not off the hook, you know.  You should be the one doing the right thing.  But it's not in your capacity, it's not in your heart, you don't get it, you know.  Anyway so let's just put a pin on that.  I asked her to stop speaking to you, the fact that she still is . . . nothing is off limits for me anymore with her, ok?  Just so you know. <u>Nothing is off limits, not her kids, not her husband, k?</u> So you keep that up, you guys keep showing off your relationship in town and thumbing your nose at me.

(Emphases added.)  The second transcript (Exhibit 4) provided:

> B:  If you continue to enrage me and she continues to enrage me (no, she does), and <u>when she is harmed, it'll be your fault</u> . . .  I am not a victim, I'm not gonna have her f*cking continue to disrespect me - she is disrespecting me, ok?  She's disrespecting my family.
>
> P:  Our relationship was bad to begin with[.]
>
> B:  I don't give a f*ck.  All I'm asking is that she stay away and if she won't, given all the f*cking circumstances, k?  That is on her, and that is her choice, and <u>she will pay for that.  She will pay!  Because, like you said, I can't control you, but I can extract a price.  I can extract a price</u>.
>
> . . . .
>
> B:  <u>Let's make this messy</u>.  Let's go.
>
> P:  What are you doing??
>
> B:  <u>I'm gonna make a f*cking mess</u>.  I'm going where the f*ck you're going.

---

[6]     As discussed more fully <u>infra</u>, one of Bernice's arguments on appeal is that she did not have an opportunity to assert the marital privilege.  But Bernice's counsel objected frequently and repeatedly to Maria's evidence, and any implication that Bernice's counsel was denied an opportunity to make an objection on another basis is without merit.

P:  I was gonna go to Keehi Lagoon[.]

B:  <u>Let's go to Star Advertiser.  Let's go there now, you</u> <u>and me.  Go hop in the car.</u>

P:  No, I'm not going to get into your car.

B:  Ok, I'll get in your car.

P:  No you're not getting in my car . . .  no I'm getting in the car with you and you're not getting in the car with me, no.

B:  Let's go, let's talk to your friend.  Let's settle this once and for all.

. . . .

P:  You're gonna try to make it all on me so that you come out all rosy.

B:  I'm going to come out all rosy.  <u>You know what's going</u> <u>to happen?  I'm gonna f*cking end up in jail.  That's</u> <u>exactly what's going to happen, ok?</u>  And that's gonna be on you.

(Emphases added; asterisks and first and third ellipses in original.)

Just before admitting Exhibit 4, the District Court made a second offer to continue the trial so that Bernice could conduct discovery:

[Bernice's counsel]:  And you know this is all through the husband who's not here, so I can't cross-examine him yet again.

So I suppose, Your Honor, could give whatever weight you want to that the Court thinks is appropriate, but it's grossly unfair that I'm being prevented from cross-examining this man.

THE COURT:  Do you want to continue this --

[Bernice's counsel]:  No, not at all.

THE COURT:  -- to do discovery?

[Bernice's counsel]:  Not at all.  Because he had plenty of time to be here today.  There's a reason he's not here.

THE COURT:  Okay.

[Bernice's counsel]:  And no, we don't want to continue it.

THE COURT:  All right.

> [Bernice's counsel]:  I just don't want -- I'd just like the Court to place the appropriate weight on this, knowing that I'm not able to ask him any questions, because he was deliberately not brought here today.
>
> THE COURT:  All right.  Well, the hearsay objection is overruled, and so Exhibit 4 is admitted.

Later in the trial, the District Court made a third offer to continue the hearing; again, Bernice's counsel declined.

Bernice testified regarding the recordings (responding to questions from her attorney), stating that she thought she was having a conversation with her husband:

> Q.    . . . [W]e saw what has been admitted into evidence as one of [Maria's] Exhibits, which is a recording of a conversation that you were having with Patrick?
>
> A.     Mm-hm.
>
> Q.     Do you recall having that conversation?
>
> A.     I mean, honestly, I was very upset so --
>
> Q.     Did you know that he was recording you?
>
> A.     No, absolutely not.
>
> Q.     Did you know that he was going to play it for his girlfriend or [Maria]?
>
> A.     No.
>
> Q.     Did you know that she was going to transcribe it?
>
> A.     No.
>
> Q.     Okay.  So you thought that you were having a conversation with your husband?
>
> A.     Yes.
>
> Q.     You did not think that she was involved in this as well; right?
>
> A.     No.

The District Court concluded that Maria proved, by clear and convincing evidence, that Bernice committed harassment as defined by HRS § 604-10.5.  The District Court expressly based its ruling on the recordings:

6

> There were, over objections, based on hearsay, there were recorded statements, which the Court finds contain threats of physical harm to [Maria].
>
> So based solely on those threats, I'm going to grant the petition and grant the injunction for three years.

Bernice timely appealed.

On appeal, Bernice makes two principal arguments. First, she argues that Maria did not prove a "threat of imminent physical harm" as required by the harassment statute, Hawaiʻi Revised Statutes (**HRS**) § 604-10.5 (2016 & Supp. 2023). Second, she argues that the District Court erred in admitting and relying upon private spousal communications between Bernice and Patrick, inasmuch as those recordings should have been excluded pursuant to Hawaiʻi Rules of Evidence (**HRE**) Rule 505(b) (2016); relatedly, she argues that she never had an opportunity to assert the marital privilege because Maria presented the recordings as "surprise exhibits" at the hearing.

**Evidence of harassment:** Bernice first argues that Maria did not present clear and convincing evidence of a "threat of imminent physical harm, bodily injury, or assault" as required by HRS § 604-10.5.

"Whether there was substantial evidence to support an injunction against an alleged harasser is reviewed under the clearly erroneous standard." Duarte v. Young, 134 Hawaiʻi 459, 462, 342 P.3d 878, 881 (App. 2014) (citation and internal quotation signals omitted). Additionally, HRS § 604-10.5(g) requires that the clear and convincing standard of proof be applied in determining whether conduct rises to the level of "harassment." We therefore apply the clearly erroneous standard as follows:

> When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable factfinder could have found it highly probable that the fact was true. In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may

7

> have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence.

In re JK, 149 Hawaiʻi 400, 409-10, 491 P.3d 1179, 1188-89 (App. 2021) (quoting Conservatorship of O.B., 470 P.3d 41, 55 (Cal. 2020)). Additionally, this court has held that "a 'threat of imminent physical harm, bodily injury, or assault' means that an alleged harasser's conduct expressly or impliedly communicates an intent to physically harm, cause bodily injury, or assault another person imminently. This is an objective test." Duarte, 134 Hawaiʻi at 464-65, 342 P.3d at 883-84.

The District Court did not clearly err in finding clear and convincing evidence of a threat of imminent physical harm, bodily injury, or assault, as there was substantial evidence from which the District Court could reasonably have found it highly probable that such a threat occurred. Maria presented evidence that Bernice said (1) Maria "will pay," (2) "[n]othing is off limits," (3) Maria would be "harmed," (4) Bernice wanted to go see Maria "now," and (5) Bernice would "end up in jail." A reasonable person would believe that Bernice's statement that she would "end up in jail" meant that her conduct would be illegal. Combined with Bernice's statements that Maria "will pay" and would be "harmed," that "[n]othing is off limits," and that Bernice wanted to go to Maria's workplace in person "now," a reasonable person would conclude that Bernice intended imminent physical harm. See id. at 465, 342 P.3d at 884 ("Under this objective standard, we are required to determine whether a reasonable person would believe the conduct of [the respondent] communicated an intent to physically harm, cause bodily injury, or assault [the petitioner] imminently[.]"). The District Court did not clearly err in finding that Maria had proved, by clear and convincing evidence, a "threat of imminent physical harm, bodily injury, or assault" pursuant to HRS § 604-10.5.

**Spousal privilege:**  In the District Court, Bernice objected to the recordings as inadmissible hearsay; she did not, however, assert spousal privilege.  The court must therefore consider whether Bernice has waived the issue or, as Bernice contends, whether the District Court's failure to address the issue was plainly erroneous.  See HRS § 641-2(b) (2016) ("The appellate court . . . need not consider a point that was not presented in the trial court in an appropriate manner.");  Hawaii Ventures, LLC v. Otaka, Inc., 114 Hawaiʻi 438, 500, 164 P.3d 696, 758 (2007) ("As a general rule, if a party does not raise an argument at the circuit court level, that argument will be deemed to have been waived on appeal[.]"  (cleaned up)).

Spousal privileges appear in HRE Rule 505.  HRE 505(a) (2016) provides that one spouse has a privilege not to testify against the other spouse in a criminal case, but "[t]his privilege may be claimed only by the spouse who is called to testify."  In contrast, and as applicable to the instant case, HRE 505(b) — which covers "[c]onfidential marital communications" — may be claimed by either spouse and may be used to prevent one's spouse from disclosing a confidential marital communication:

> (b)  Confidential marital communications; all proceedings.
>
> (1)  Definition.  A "confidential marital communication" is a private communication between spouses that is not intended for disclosure to any other person.
>
> (2)  Either party to a confidential marital communication has a privilege to refuse to disclose and to prevent any other person from disclosing that communication.

In other words, the spousal or marital privilege contains two components:  section (a) covers one spouse's privilege not to be compelled to testify against another, and section (b) covers

9

both spouses' privilege to prevent the admission into evidence of confidential marital communications.[7]

Ordinarily, voluntary disclosure of a privileged communication constitutes a waiver of that privilege. See HRE Rule 511 (2016) ("A person upon whom these rules confer a privilege against disclosure waives the privilege if, while holder of the privilege, the person or the person's predecessor voluntarily discloses or consents to disclosure of any significant part of the privileged matter. This rule does not apply if the disclosure itself is a privileged communication."); cf. United States v. Breton, 740 F.3d 1, 11 (1st Cir. 2014) ("[L]ike all privileges, the marital privileges hamper the truth-seeking process and must be interpreted narrowly."). However, the plain language of Rule 505(b)(2) provides that "[e]ither party to a confidential marital communication has a privilege to . . . prevent any other person from disclosing that communication." (Emphases added.) Additionally, HRE Rule 512 (2016) provides that "[e]vidence of a statement or other disclosure of privileged matter is not admissible against the holder of the privilege if the disclosure was (1) compelled erroneously, or (2) made without opportunity to claim the privilege." Accordingly, Bernice was entitled to the protections of the spousal communications privilege if she met the requirements of HRE Rule 505(b)(1) — that her conversations with Patrick were "private communication[s] between spouses that [were] not intended for disclosure to any other person[.]" See State v. Levi, 67 Haw. 247, 250, 686 P.2d 9, 11 (1984) ("Marital communications are presumed to be confidential, but the presumption may be overcome by proof of facts showing they were not intended to be confidential.").

---

[7]     HRE Rule 505(c) (2016) contains exceptions to this privilege, though these exceptions are not applicable to the instant case.

Bernice did not assert the privilege in the District Court, however.  HRE Rule 103(a) (2016) provides:

> (a) Effect of erroneous ruling.  Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, <u>and</u>:
>
> (1) Objection.  In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, <u>stating the specific ground of objection</u>, if the specific ground was not apparent from the context; . . .

(Emphases added.)  The Hawaiʻi Supreme Court has recognized that

> HRE Rule 103(a)(1), which covers the situation where evidence is admitted at trial, requires a "specific" objection or motion to strike if the ground is "not apparent from the context."  The opponent can run afoul of rule 103(a)(1) in various ways.  A complete failure to object will waive the point.  <u>Waiver will also occur when the trial objection, properly overruled, differs from that pressed on appeal</u>.

<u>State v. Vliet</u>, 91 Hawaiʻi 288, 298–99, 983 P.2d 189, 199–200 (1999) (cleaned up).  Bernice did not assert spousal privilege as the basis for the objection, and as such, waived the objection.

The question, then, is whether the District Court plainly erred in admitting this evidence.  The Hawaiʻi Supreme Court has set forth a three-part test for analyzing claims of plain error in civil cases:

> In civil cases, the plain error rule is only invoked when "justice so requires."  We have taken three factors into account in deciding whether our discretionary power to notice plain error ought to be exercised in civil cases: (1) whether consideration of the issue not raised at trial requires additional facts; (2) whether its resolution will affect the integrity of the trial court's findings of fact; and (3) whether the issue is of great public import.

<u>WW v. DS</u>, 149 Hawaiʻi 123, 130, 482 P.3d 1084, 1091 (2021) (quoting <u>U.S. Bank Nat'l Ass'n v. Castro</u>, 131 Hawaiʻi 28, 42, 313 P.3d 717, 731 (2013)).  The third factor — "great public import" — is required.  See <u>Cnty. of Hawaiʻi v. C & J Coupe Fam. Ltd. P'ship</u>, 124 Hawaiʻi 281, 305, 242 P.3d 1136, 1160 (2010) ("Inasmuch as the third factor is not present here, plain error

cannot be noticed."). Reviewing each of the three factors, we decline to invoke plain error here.

First, this court would need additional facts to consider this issue: namely, whether the communications were intended to be confidential. This is a question of fact:

> No facts negating the presumption of confidentiality appear to have been present in this case, but the spousal privilege was in any event not asserted . . . . Had the spousal privilege been asserted by either spouse in this case, the family court would have had to determine whether the communications were intended to be confidential and therefore subject to the spousal privilege.

LC v. MG & Child Support Enf't Agency, 143 Hawai'i 302, 326, 430 P.3d 400, 424 (2018). While the record here suggests that the communications were intended to be confidential — given Bernice's testimony and the presumption of confidentiality for marital communications — this is still a question of fact that should be left to the trial court. See, e.g., Hodes v. Mostaque, No. 2024-0015-JTL, 2026 WL 1721817, at *6 (Del. Ch. June 15, 2026) ("Applying the Spousal Communications Privilege requires a fact-specific analysis."); accord State v. Gutierrez, 482 P.3d 700, 714 (N.M. 2019). This factor weighs against finding plain error.

Second, addressing this point of error on the merits would undermine the District Court's findings of fact. The District Court expressly relied upon the recordings/transcripts in finding that Bernice threatened Maria with physical harm. This factor likely weighs in favor of finding plain error.[8]

Third, Bernice argues that this case is of "great public import" because the transcripts were "surprise exhibits" at trial — she contends that Maria obfuscated the fact that the

---

[8] This is not entirely clear. See Alvarez Fam. Tr. v. Ass'n of Apartment Owners of Kaanapali Alii, 121 Hawai'i 474, 490, 221 P.3d 452, 468 (2009) (stating that "we believe that the second factor of the plain error test weighs against plain error review if the resolution of an issue would not affect the integrity of the findings of fact and that several cases from this jurisdiction support our interpretation of the second factor," but expressly leaving the issue unresolved after noting that the dissent took the opposite view).

recordings were of conversations between Bernice and Patrick —
and "[t]rial by ambush is an unfair tactic that has no place in
our judicial system."  See Alvarez Fam. Tr., 121 Hawaiʻi at 491,
221 P.3d at 469 ("[I]n civil cases, an issue is of 'great public
import' for the purposes of plain error review only when such
issue affects the public interest.").  Bernice also argues that
she never had an opportunity to assert the spousal
communications privilege, and that "the issue itself impacts the
marital privilege."  These arguments are without merit.

       **(i)**  There was no obfuscation here.  As for the
Petition itself, a petitioner for a TRO is not required to
include every piece of evidence of harassment in the petition.
Indeed, the court form for seeking a TRO — Form #1DC51 —
requests the following in the Declaration of Petitioner section:
"Briefly and clearly explain how you have been harassed or how
you have been threatened with harassment, including all relevant
dates.  Write legibly so the Court can read your statement.  Use
additional sheets only if necessary."  (Emphases added;
parenthesis omitted.)  Regardless, Bernice testified that she
knew Patrick was the "third party" whom Maria had referenced in
the Petition:

> Q.    And then to read the -- the third -- when you
> saw a third-party, how [Maria] chose to word the petition,
> did you know who she was talking to?
>
> A.    I knew who she was referring to.

During trial, Maria was clear about the existence of the
recordings (and her source for the recordings) as she sought to
introduce her evidence:

> THE COURT:  Okay.  So what do you want to say next?
>
> [Maria]:  And so in the last October 19th, and
> October 21st, while that was happening also, so a third-
> party also informed me that she was making statements,
> which I have on recorded audio.
>
> [Bernice's counsel]:  Object.

> [Maria]:  And I have the -- I kind of like transcribed it and highlighted the points that I found really threatening.
>
> [Bernice's counsel]:  Okay, so that's the definition of hearsay.
>
> THE COURT:  Okay.
>
> [Maria]:  And I have --
>
> THE COURT:  Hold on.  So are you talking about this first page?
>
> [Maria]:  No, that is just my statement.  I'm talking about these.
>
> THE COURT:  Oh, okay.
>
> [Maria]:  And I have, I'm not sure if I can play it.
>
> [Bernice's counsel]:  Just call it Petitioner's 1 and 4, Your Honor, for the sake of the record?
>
> THE COURT:  Yeah, we can so 10/19/25 is Exhibit 3.
>
> [Bernice's counsel]:  So what you're referring to, is that one of these texts or is that --
>
> THE COURT:  It's these two.
>
> [Bernice's counsel]:  Okay.
>
> [Maria]:  And I have it on a -- an audio file.
>
> [Bernice's counsel]:  Yeah, so I have one.  Is there another one?
>
> [Maria]:  Right here.
>
> [Bernice's counsel]:  Okay.  I have all three of them, Your Honor.
>
> THE COURT:  <u>All right.  So who -- who is speaking on this</u>?
>
> [Maria]:  <u>The third-party, Patrick Parsons, and</u> <u>[Bernice]</u>.  And that's how I was informed that she was saying that my kids and my husband are off limits -- are ot [sic] off limits to her, and then she --
>
> [Bernice's counsel]:  I'm objecting to all this because it's hearsay.

(Emphases added.)  There is no obfuscation of evidence here.

**(ii)**  Bernice's arguments regarding "surprise" exhibits and "trial by ambush" are without merit, both because

14

of the nature of TRO proceedings and because the District Court repeatedly offered Bernice a continuance to conduct discovery.

By statute, after a District Court grants an ex parte motion for a TRO, the District Court is required to hold a trial quickly. See HRS § 604-10.5(g) ("A temporary restraining order that is granted under this section shall remain in effect at the discretion of the court for a period not to exceed ninety days from the date the order is granted . . . . A hearing on the petition to enjoin harassment shall be held within fifteen days after the temporary restraining order is granted."). These proceedings typically lack the formal pre-trial exchange of discovery that occurs in many other kinds of civil cases. And here, nothing in the record suggests that Bernice propounded discovery requests upon Maria, or that Maria refused to comply with any such requests.

Moreover, Bernice could have avoided the alleged "trial by ambush." The District Court made three offers to Bernice and her counsel to continue the hearing to conduct discovery. Bernice's counsel was adamant in proceeding with trial that day. Bernice cannot complain about the lack of opportunity to evaluate the evidence when she expressly rejected the District Court's offers to do just that.

**(iii)** Bernice had ample opportunity to assert the spousal communications privilege. Bernice makes no argument to suggest that the District Court prevented her from making objections, and nothing in the record suggests as much. Before the transcripts were admitted into evidence, Bernice was aware that those transcripts represented conversations between her and her husband. She therefore had knowledge that the evidence contained spousal communications — and she had the opportunity to make objections to the admission of that evidence — but she did not make a spousal privilege objection at any point in the proceedings.

**(iv)** Nothing herein undermines the spousal communications privilege. Unlike a constitutional or statutory prohibition on admission of evidence, the spousal communications privilege can be waived. See State v. Domingo, 69 Haw. 68, 70, 733 P.2d 690, 692 (1987) ("[S]ince the introduction of the evidence in question was prohibited by statute, it constituted plain error and is noticeable by this court."). Bernice has not pointed to any authority suggesting that it is the trial court's responsibility to intervene, sua sponte, to protect against waivers of evidentiary privileges.

In sum, there is no "great public import" here to warrant plain error review. The lack of "great public import" is dispositive in the plain error analysis, see Cnty. of Hawaiʻi v. C & J Coupe Fam. Ltd. P'ship, 124 Hawaiʻi at 305, 242 P.3d at 1160, though the first factor also weighs against Bernice. As such, we find no plain error here.

Based on the foregoing, we affirm the October 30, 2025 Injunction Against Harassment.

DATED: Honolulu, Hawaiʻi, August 7, 2026.

On the briefs:

Benjamin E. Lowenthal,
for Respondent-Appellant.

Maria Regina E. Jacinto,
Petitioner-Appellee.

/s/ Clyde J. Wadsworth
Presiding Judge

/s/ Kimberly T. Guidry
Associate Judge

/s/ Daniel M. Gluck
Associate Judge

16